Your argument in our final case, number 144283, United States v. Stover. Good morning. May it please the Court, I am Maggie Grace on behalf of Appellant Lavelle Stover. With me is Paresh Patel from the Federal Public Defender of the District of Maryland. At 1 a.m., two officers on routine patrol of a residential street observed a truck with Virginia complex in Temple Hills, Maryland, which is near the Maryland-Virginia border. The officers pulled into the parking lot and stopped directly behind Mr. Stover's vehicle, preventing him from leaving. The officers used the emergency lights on their marked car and shined a spotlight on Mr. Stover's side of the vehicle. Mr. Stover exited and walked five to six steps to the front of the car. Mr. Stover was stopped at the moment the officers pulled behind him. He passively acquiesced by remaining at the scene, and the fact that he walked five to six steps to the hood of the car does not negate the seizure. The District Court misapplied the circuit's precedent and found that the gun that was recovered from the front of the car did not need to be suppressed because Mr. Stover was not stopped. This Court should reverse the District Court's judgment. Plainly, there was a seizure or stop in this case. Where a defendant passively acquiesces, a seizure occurs when, in view of the totality of the circumstances, a reasonable person would not feel free to leave. This case is fairly similar to United States v. Jones, which this panel is very familiar with. A driver is seized at the moment officers pull up directly behind his car, preventing him from leaving. Here, as in Jones, the officers pulled up directly behind Mr. Stover's parked car, which was pulled head first into a parking lot, preventing him from leaving. Here, as in Jones, Mr. Stover exited. Even more egregious than in Jones, it was 1 a.m. in the morning here. The officers activated the emergency lights on their marked car, shone a spotlight on his side of the vehicle. Their message could have been no more clear. He was not free to leave. A reasonable person would not have felt free to leave, and Mr. Stover did not leave. He passively acquiesced by remaining at the scene. He did not... By remaining at the scene, he acquiesced. He was walking away from the scene. He walked five to six steps to the front of the car. The district court found... What happened before he stopped? Before he stopped at the front of the car, your honor? Did the officers say anything to him? The officers, the testimony, which the district court found that the officers said, get back in your car and try to prevent Mr. Stover from getting out of the car, with all due respect to the district court, that's internally inconsistent. And the officer testified at the suppression hearing that Mr. Stover was not facing him when he said this and never acknowledged his presence. And even if he made the statement, it does not change or alter the fact that the district court found as a fact that he only walked five to six steps to the front of the car. It was not a long distance. There was no requirement that he has to stay in the car. That's Jones. Jones says the officer seized when the officers pull up behind his car. And they said, and they saw him drop something. The officers testify that he saw him drop something. But assuming he dropped something... Was that after he'd walked five or six steps or... That was... Like after the fourth step? Where was it? The testimony was that he exited, walked five to six steps, and the officer saw him drop the gun. But assuming he dropped the gun... The officer didn't see him drop a gun. He saw him drop something, right? I'm not sure whether he dropped the gun or he dropped something. Did he recognize it as a gun? Did the officer recognize it as a gun when he dropped it? I believe so, Your Honor. Okay. I could have that wrong, but I believe the officer recognized it as a gun when he dropped it. But assuming that he dropped the gun, respectfully, that's irrelevant to the question of whether or not there was a stop. Because the stop occurred at the moment the officers pulled up behind him with their lights activated in a marked patrol car, possibly with sirens, and a spotlight shining on his side of the vehicle. The difficulty that I have with your argument, I think you're right that that earlier case, Jones, was right on point with respect to stop. But there was no issue in Jones. I went back and looked at it. Did you, by chance, have a chance to look at the briefs in Jones? I did not have a chance to look at the briefs in Jones. Well, I'm very familiar with the case. In Jones, the defendant conceded that he had deferred, and the government conceded that he had deferred to the show of authority. And the whole argument here is that he hadn't conceded to the show of authority. So when you were in your brief, you seemed to suggest that since it wasn't an issue there, I think that you are in a different situation here than the Jones defendant was. Jones, to me, your honor, seems on point. The officers pulled up, he exited, got out of the car, and then later he lifts his shirt. A later case, United States v. Black. The whole thing in Jones was whether there had been a stop or not. There wasn't any argument that there was no, that he didn't accede to authority. He clearly did. Here, there is that argument. And so I think you have to address that. If I understand your question, your honor, the issue here is whether or not there was a stop. Yes, but you have to show that you, after the stop, that you accede to authority. And here, Mr. Stover passively acquiesces by remaining at the scene. Passively acquiesced. And I don't even dispute, in my view anyway, and it's only mine, snaking four, five, or six steps, even in the wrong direction, because he was walking away from the policeman, might be okay. But he had a gun in his hand. But as United States v. Black, which is a later case written by Judge Gregory, Judge Gregory says, where a defendant passively acquiesces, as my client did. But has he passively acquiesced if he gets out of the car with a gun? In Jones, the defendant gets out of the car and the question is... Without getting a gun. But respectfully, the question isn't whether Mr. Jones gets out, Mr. Stover gets out with a gun. The question is whether Mr. Stover passively acquiesces. He passively acquiesces because when the officers come up to him, he could have done a million things to try to evade the officers. But he didn't. He exited and walked out front of the car. Well, we now think he didn't, but at the time, he gets out of the car and walks in the opposite direction with the gun. Possessing a gun. Possessing a gun. I certainly haven't found a case that would go your way that has those kinds of facts. But Jones possessed a gun when he got out of the car. Jones had a gun that was hidden in his pants. He never brought it out. But the question, again, is not whether Mr. Stover possesses a gun. And Hodari D., the defendant, throws the evidence to the side and the question is... He'd thrown the evidence. If he'd thrown the gun out the window, I might be with you. But he didn't throw the gun out the window. He has the gun in his hand. But I don't see a difference between having the gun in the car versus having the gun getting out. Again, in Jones, the officers stopped him and he exited. Here, Mr. Stover... It's inescapable. He was thinking of resisting. But he's lucky there wasn't a shootout. Here or in... Here. Here. But there's no... The guy's got a gun in his hand when he gets out of the car. If he was anything other than cooperative, he never... He could have turned the gun on the officers... Not cooperating if he's got a gun in his hand. ...but he didn't turn the gun. And if he's walking the other way. I mean, even there are cases that even walking the other way is not cooperating. Walking away from the police officers. In United States v. Jones, this court cites United States v. Green, which is a Seventh Circuit case that holds there's a seizure when the individual gets out of the car and walks away from the officers. That's cited at Penn site. Well, I guess... Maybe put this in a little bit differently. I think that you have to go to Mendenhall. Okay? Satisfy me, anyway. And Mendenhall applies because he passively acquiesces. That's California... If I should conclude that he didn't passively acquiesce, then what? If he didn't passively acquiesce and you apply the Hodari D-test, he submits again by remaining at the scene. Again, he could have backed his car into the officers to get away or evade the officers. Or he could have ran out of the car with a gun and started shooting at them. Exactly. Or he could have remained in the car and started shooting. But he didn't do anything other than remain at the scene when he could have run away. He exited and merely walked five, six steps when the officers pulled up behind him, directly behind him, prevented him from leaving. They had their emergency lights on. They were in a marked patrol car. They shined a spotlight and they possibly activated the sirens. No reasonable person would have felt free to leave. And he didn't leave. It's undisputed that he remained at the scene. He has to submit to authority. I think you're right about the stop. Speaking only for myself, I think no reasonable person would have thought he could leave. But you have to submit. But Hodari D does not apply where a defendant passively acquiesces. If he passively acquiesced, that's a question. But just for purposes of the argument here, assume that he has not passively acquiesced. Do you lose? No, I don't because then Hodari D applies and there has to be physical force or submission. The officers pulled up. I'm asking you about the submission. He submits again because he remains at the scene and he doesn't flee. This is not Hodari D where the officers come up among a group of people and Hodari D flees. But it doesn't have to be those facts. You would agree with me on that. I agree on that. But here it's undisputed he remains at the scene and does not flee. He doesn't, Oakley, that's an unpublished case. He doesn't, what the defendant did there, back the car into the officer's car to evade the arrest. How do we view the evidence here? Your favor or his favor? The evidence is viewed in the light most favorable to the government. But the evidence here that was established at the suppression hearing is that the officers pulled up behind him, stopped directly behind him at a 45 degree angle. I think if he gets out of the car with the gun, he's contemplating resistance. And he walks five or six steps and he puts the gun, throws the gun on the ground. He's changed his mind. I think that is the evidence in the light most favorable to the government. And we're very fortunate that a couple of people weren't killed, I'm sure. But that's how I read the evidence in the light most favorable to the government, that he has a gun in his hand. He's walking away from the officers. He's contemplating resistance. But there's no evidence in the record that he ever contemplated turning the gun or running. We have to view the evidence in the light most favorable to the government. They're entitled to the reasonable inferences there. But there's no reasonable inference. If a guy's, the police was behind him, he can't get out of there. And he gets out of the car with the gun. The reasonable inference. He's not acquiescing and he's walking away. He's contemplating doing something with that gun. This all occurred in a very short amount of time. The reasonable inference by him getting out of the car and only walking five, six steps is that he understood he was not free to leave. Otherwise, he would have bolted out of the car and run in a direction opposite the officers and tried to run along the road and get out of the way. Or he would have turned the ignition on and backed into the officers. Can I ask you, I'm sorry. I just wanted to ask you a factual question. I thought you told me that Jones had a gun. Jones had a gun hidden in his pants. Yeah, he lifted his shirt up. He lifted his shirt up and they didn't find the gun. But then he lifted his shirt up. I don't see that in the opinion. But he stopped. And I didn't remember it. But he stopped. I know. He did. Yeah, he stopped. I can find the pin site for you. He had New York license plates. No, I remember all of that. You remember who's on the panel in Jones? It was the panel right here today. And there's no evidence that he had a gun in his hand when he got out of the car. Where else could he have had it? You mean in Jones? In this case, when he got out of the vehicle, the police report says that one of the officers saw him with a gun. The trial testimony is that one of the officers saw him with a gun. The suppression hearing testimony. Again, I'll go back and look to clarify. But again, the question of whether or not he had a gun is irrelevant to the question of whether or not there was a stop. The stop occurs where there was a stop occurs when they pulled him behind him. Exactly. And then he didn't acquiesce. He got out of the car with a gun and went the other direction. But respectfully, And then he stopped and threw the gun on the ground. A defendant can be stopped. The question then becomes, had he acquiesced? Respectfully, The district court said he hadn't. Under Jones, a defendant does not have to remain in the car to be stopped. True. A defendant can get out. The only difference here is that Mr. Stover took the additional step. If he had gotten out with his hands up, he would have been stopped, wouldn't he? He got out of the car with a gun and walked away. But he only walked to the front of the car. Again, he stopped and threw the gun on the ground. There's when he acquiesced. The inference that should be taken is that, again, this occurred within a short period of time. And the fact that he didn't do what he could have done and back into the officers or get out and pull a gun on the officers is that he understood that he was seized and he remained at the scene. Nearly exiting and walking five to six steps to the front of the car is passively acquiescing because he could have backed the car. He could have backed his car into the officers. Well, I guess when you're back to how you view the evidence, whether that may be viewed in the light most favorable to you, you could have come up with that. But you say we have to view it in the light most favorable to the government. The evidence is viewed in the light most favorable to the government. But there's no evidence here that Mr. Stover was fleeing. Well, the evidence is he got out of the car with a gun and walked five or six steps. And the gun was dropped on the ground or thrown on the ground and from which it was picked up and seized and used to prosecute him. But again, assuming that he had a gun in his hand and he exited and put it under the car, that's irrelevant to the question whether they stopped. I thought you said one of the officers saw him with the gun when he got out of the car. Yeah. That's what you just told me. The police report that was filed was that one of the officers saw him with the gun. That's in the light most favorable to the government. That's what it was. He got out of the car with a gun. And assuming he had a gun, that's irrelevant to the question of whether or not there was a stop. Because there has to be acquiescent. But the stop would be before that. That's your point. And we agree with you. Or at least I do. We'll give you that. We'll give you there's a stop. The question is, did he acquiesce to the stop? The answer is no until he threw the gun on the ground. Acquiesce to the show of authority. You acquiesce to the show of authority when you respond by remaining at the scene. OK. Let me just ask you this. If he had stayed at the scene and brought his gun out and aimed it at the officers, would you still say that he had acquiesced? No. OK. So just by stopping at the scene, you don't. Just by staying at the scene, you don't acquiesce. No. So you just told me a minute ago by staying at the scene, you acquiesce. But that doesn't do it. By staying at the scene and acting cooperative, peacefully, he didn't point the gun at the officers. I understand that. But how was that actually cooperating? He was throwing away a weapon. He was cooperating because he didn't do the million other things he could have done to evade the officers. He got out and he understood that he could not leave. And he was not free to leave. I found the gun reference. You don't have to worry yourself with it. OK. I see that my time is up. I'll save the rest of my time for rebuttal. Thank you very much. Mr. Zielinski, this looks pretty much like Jones did. Respectfully, Your Honor, it's very different from Jones. As you indicated, Jones dealt only with the Mendenhall aspect of the test. That is Hodari's first necessary condition. Whereas the crucial issue in this case is the second part of Hodari's test, whether or not there was submission. Well, maybe it wasn't argued in Jones. And I think that's correct. It wasn't argued. But how can you say that Jones submitted if he had a gun on himself? In that case, Jones didn't do any of the things that we saw the defendant do in this case. He didn't move rapidly away from the officers after an express command to stay in the vehicle. He didn't brandish the weapon. He wasn't, in this case- Do we have evidence of brandishing? Well, we have evidence that he had the weapon in his hand when the officer sees him, when he comes around. So Mr. Stover has the weapon. The weapon is drawn and loaded, in fact. It's got a bullet in the chamber. It's drawn, you said? He has it in his hand. Yes, Your Honor. It's loaded? And it's loaded. There's a bullet in the chamber when he comes around. The 9mm Glock. That's right, Your Honor. And it's got a bullet in the chamber. It's got 21, I believe, bullets in the auxiliary. How many? I believe it has 21- 21. In an auxiliary, and it has one in the chamber. He comes around the car. The reality is that the best thing that happened in this circumstance is that the officer had the presence of mind to pull out his gun and point it at Mr. Stover, which was the only reason Mr. Stover submitted to authority. Had that officer pulled the trigger, had Mr. Stover pulled the trigger, we could be facing a national calamity here. It was but for the officer's restraint in successfully bringing Mr. Stover under control when he came around the car, that there was any kind of submission here. Why did they stop him anyway? What did he do that was wrong? So as the court has earlier indicated, the government is not putting all of its chips on that, Your Honor. What did he do? So the concern here is that the police went by. There was a man- What did he do? There was a man and a woman in the car, and the light was off, and there was, I would think, concern about the woman's safety, and they wanted to check. Have you ever been in a car with a woman with the lights out? I have, Your Honor. I was in high school. Oh, there you go. Most car lights go off when you close the door. And, Your Honor, under Hodari, the government is not up here today defending the validity of that initial stop. Because that's where it starts. You talk about a national disaster, maybe that's the national disaster itself. That becomes more the profile and the form. He's sitting in the car doing nothing, and you pull behind him at a 45-degree angle, blocking him, putting on the blue lights. There's a wall in front of him. He's already seized there. If he had submitted to authority, he would have been seized, and there would have been a constitutional violation. Let's tease out what submission to authority would have been. If he'd thrown the gun out the window, would he have been submitting to authority? That is the closest and most difficult hypothetical, Your Honor. I would say that disposing of evidence in that circumstance a judge could well find was not a submission to authority until the point after he had gotten rid of the gun. If you commit another crime, it's difficult to see that you're submitting to the police authority. So your answer would be the same if he'd thrown some pot out the window? Yes, Your Honor, if he had obstructed justice. What do you mean obstructed justice? He's trying to dispose of evidence. He's got it on him, and he's trying to get rid of it. That's not submission to police authority. When you're submitting to police authority, you do what the police would like you to do, their authority. And one of those things is not attempting to dispose of evidence. For instance, if he were to- How do we distinguish with Jones then? Because Jones had the handgun, and then he had a small bag of marijuana. So Jones did not attempt to dispose of any of the materials, and he didn't walk away from the officers. Suppose he had just kept the gun in the car with him. Would he have submitted to authority? Yes. Had Mr. Stover remained in the vehicle with the gun, and had the police then searched the vehicle, they would have had no reason for searching. He would have submitted to authority, and under Hodari, both necessary conditions would have been fulfilled, and there would not have been a legal search and seizure. Had he been convicted of a felony prior to this? He had, Your Honor, yes. So then he would be a felon in possession, right? He would be a felon in possession, that's correct. But you wouldn't be able to charge him? That's correct, because the gun would be suppressed. What requires a citizen to remain in their car? So first, in this case, Your Honor, the police instructions to remain inside the vehicle. So what? Police can instruct you to do anything. Suppose I'm walking down the street today, and a police officer said, all right, you, I want you on the other side of the street. You may I have to go over there? No, Your Honor. In that case, you would not have submitted to the police authority. The only reason that he has to remain in the vehicle is because of the second prong of Hodari D's test. That is, does he submit to the authority of the police? You have the right when you're walking down the street not to submit to the police's authority, undoubtedly. But in this case, the question is, did he submit to the police's authority? When the police say, remain in your vehicle, and he instead gets out, walks rapidly away with a loaded gun in his hands, goes to the front of his truck, thus putting the truck between himself and the officers, and then discards the handgun only to be brought into submission by Officer Halsey coming around and pulling his gun out at Mr. Stover, it's a very different set of circumstances. So you're saying the acquiescence is solely because he got out of the car? Lack of acquiescence because he got out of the car? No, Your Honor. It's the totality of circumstances here. So the first thing is that he was told to remain in the vehicle, and he got out. What if he had gotten out of the car without the gun, walked to the front of the car, away from the police officer? If he had gotten out of the front of the car without the gun and walked away from the police officer, he would still, in the light most favorable to the government, be getting up to run away. What if he had gotten out of the car and put his hands up? Then he would not be getting up to run away, and I don't think that he would have, in that case, he would have submitted. What if he had gotten out of the car and walked toward the police officers? That sounds exactly like Jones to me. If he got out of the car and walked toward the police officers with his hands up, Your Honor, I think he would have been submitting to their authority. I don't know that there's anything about hands up in Jones. No, Jones didn't have his hands up. That's right, Your Honor, but in Jones, there's... I'm sorry, Your Honor. It was my recollection that when he got out of the car, he had a pizza in his hand. Right. He's holding a piece of pizza. Okay, so he doesn't have his hands up. But he walks, and what is he... He has a gun. How is that acquiescent? In Jones? Because he doesn't have the gun in his hand. What difference does it make? Is it worse? It's concealed. It's better for the police officers in your hand, because then they would know you have it, and they draw their weapons. Sincerely, Lieutenant, you don't know, then he shoots you. So that argument in Jones was not pressed. The court did not consider it in Jones. And there well could have been a district court below. The government conceded it. Yeah. And it's brief. That there was a submission to authority. Yes. That's right. And Jones is very, very different, Your Honor, from what happened here. Jones acquiesces to the police authority, and he submits to what's going on. He talks to them for, what, 10 minutes or so? Yeah, he engages in ongoing dialogue. He doesn't ignore an instruction. When he got out of the car, he was on his way to the apartment because his other friends had gone on ahead of him. He was on his way. He wasn't submitting to authority. He was walking. He didn't get far because they walked up to him and said, hey, and asked him all these questions about, then they said, lift your shirt up. He was walking toward the apartment. I mean, I remember that. And there is no question that when he lifts his shirt up, that is a clear signal of submission to police authority at that point in Jones, Your Honor. Nothing like that happened here. Were you involved in the Jones case?  I'm the only person up here who was not involved in the Jones case, I believe. I don't think Ms. Grace was there. Well, of those standing now and sitting in robes. But I do think it's important. Brenlin talks about that a person may acquiesce, a seated person, by remaining seated. And then Brenlin further says, and a person may also submit by not getting up to run away. Brenlin doesn't say that you have to let the person get two blocks, three blocks, four blocks. But Jones says that, and the government conceded the point that he had submitted. Yes. And Jones is very different. This is a fact-bound and intensively, as Wilson points out, a fact-intensive question. That is, whether or not- What's the very difference? What's the, you said very different. What is the very difference? The very difference are that in this case, there was a rapid movement away from the car in express- It's not true. It's not true. You're misstating the fact. Said that he walked toward the front. It never said he walked away. As a matter of fact, in the facts of this case, he couldn't have been more than, at any point, more than two feet away from his car at any point, because it said he got out and he walked to the front. It never said he walked away at all. And another thing, too, about, you can't have it both ways. America has a Second Amendment, right? So why can't you even ask? If you had a holster, a holster with a gun, and the police officer said, hey, come over here, and you walk toward the officer with a weapon, that's acquiescent. Having a weapon doesn't negate acquiescence. Respectfully, Your Honor, I believe the- You think it does? I have to now take off my- No, Your Honor. If I could answer the questions in seriatim, the first issue, that is whether or not he walked away from the officers, he clearly did. As the record shows, the car was parked. They pulled up behind the car. Right. At that point, they were behind the truck. He walked towards them. He was walking to the back of the car. Exactly. In order to walk away- He walked away from them in that he walked to the front of the car, and they were at the back of the car. That's correct, Your Honor. So he walked to the front of the truck, thus putting the truck between himself and the officer. Do you agree with that? Is that what the evidence was? The record below, at one point, it says five or six steps. At one point, the judge says, I believe, Judge Grimm, that it looks more like 15 to 20 feet. It depends how big your steps are. That would be five or six steps. I think that's right. Judge has to rely on the evidence. He can't just come up with a new theory of how- That's right, Your Honor. And I'm not sure how far the court wants me to go outside the record, but a Chevy Silverado, of which there's a picture of in the joint appendix, is not a Mini Cooper. It's not a small vehicle. To get to the front of a Chevy Silverado, you have to get out, and then you have to walk around the hood of the car, which is not an insubstantial distance. So there's no question that it was at least five or six steps that he took. And I thought that the record was uncontroverted. In fact, I thought that Ms. Grace told us this, that it all happened really quickly. Well, there's- So he had to walk quickly, right? Yeah, there's some confusion below, which then gets clarified at trial as to the CAD report, and I believe- As to the what? I don't know if the report of the radio traffic with the police, and I don't know if the court wants me to go into that or not. That cuts to how long the entire interaction took. But there is no question that the distance that he walked was no further than from where I'm standing to where you are, in all likelihood. But he did so with a gun, with a loaded firearm, in express ignorant- to the order that he'd been given to remain in the vehicle. He then walked away from the officers, placing the cab of the truck between himself and the officers, and discarded a handgun. He was only- And it was only that he acquiesced when Officer Halsey took out his gun and pointed it at Mr. Stover. Well, this was all happening pretty quickly, right? Very quickly, Your Honor. So that it's- I don't know that it's exactly clear from the record what happened when. It's- So Judge Grimm finds that he- that Mr. Stover ignores a order to remain inside the vehicle. He gets out, and it is uncontroverted that he walks to the front of his truck, thus placing the truck between himself and the officer's car. It's uncontroverted that he- I should say, of course, Ms. Chin offers testimony that's found to be unreliable. But as far as Judge Grimm finds, he deposits the handgun in the front of the car, and he is only brought under submission when Officer Halsey points the firearm at him. Now, on JA-318, Officer Halsey says in trial testimony that he, in fact, does see a firearm there when he gets to- in his hand when he gets to the front of the car. So on JA-318, Officer Halsey says, in fact, that, can you explain to me, he says, how much time had elapsed. And then at that point, do you recall how many steps you took? And he says that Halsey takes 11 steps. But I think it's important to understand that what happened here was, Halsey says, from the time- I'm sorry, the government says from the time you executed your cruiser to the time you first saw the firearm in the defendant's hand at the front of the vehicle, how much time had elapsed. And Officer Halsey says a few seconds. I think that's an accurate assessment. This was a fast-moving circumstance. The police saw a man getting out of a truck with a firearm, moving rapidly away from them. They came around the truck. They pointed a gun at him because he had a loaded firearm, we now know, in his hand. And he then dropped the firearm and then submitted to their authority. That's a classical indication of submission once he, at the end, he clearly falls under the second condition of Hodari D. But the first part, when he gets out of the vehicle, when he walks away, it appears in the light most favorable to the government at a rapid pace, but even I would submit if he just walks away with the loaded firearm, he moves away to the other side of the truck, placing the truck between himself and the officers. And at that point, he only discards the weapon after an officer has had to unholster his firearm and point it at him, shows none of the indications of submission in Jones. It shows none of the indications of submission that are present in Black. And certainly, it is not the sort of sustained police interaction that this court found would qualify or may qualify as the equivalent of physical force in Wilson. And I think it's important to look at what the Supreme Court said in Brenlin when they said that a fleeing man isn't seized until he's physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away. In this case, Mr. Stover went well beyond getting up to run away. He got up. He got out of the vehicle. He walked rapidly away from the vehicle where he got to the front and eventually discarded his handgun. Yeah, I think you represented to us a few minutes ago or maybe just in this most recent series that the officer testified that he saw him with the gun as he was running to the front of the car or walking quickly to the front of the car or walking to the front of the car. So Officer Halsey sees him holding the gun at the front of the car. Officer Yambo sees him with the gun as he's going to the vehicle. I believe Officer Halsey, it's a little confusing, and Officer Yambo is on, I find it easiest to think on the driver's side. Officer Halsey is on the passenger side. Officer Yambo sees him with the gun, which would make sense because he sees him get out. He sees him moving. Officer Halsey gets out of the passenger side, sees him with something in his hand, gets around to the front of the car, at which point he has a good view of Mr. Stover, realizes it's a gun in his hand. That's my reading of the record. And then on holster. Did the facts say that they told him not to get out of the car? Yes. Judge Grimm. Is that correct? That's what Judge Grimm found. I believe that's correct. Yes, Your Honor. Okay. So then he was told not to get out of the car before he got out of the car, right? He was told to remain in the vehicle whether or not it was before he got out of the car as he was getting out of the car. It's unclear in the record. Well, if the stop was illegal, why wouldn't everything else be fruits of the poisonous tree? Because he didn't submit to authority. So there has to be submission. Well, those are cases where someone says, hey, you stop and you keep going. But wasn't he already seized when they blocked him in? It was a wall in front of his car. He was already seized. Respectfully, Your Honor, he could have easily kept running away. And that's the whole point of the Hodari test. The Hodari test can't vanish merely because there was an automobile parked behind another automobile. You mean to tell me you're not seized unless there's no way of escaping? No, Your Honor. You are seized if you passively acquiesce, which he clearly did not do here. There was nothing passive about Mr. Stover. When you use physical force of a 3,000-pound car to block someone in, that's a show of force. And when there is a show of force under Hodari, there are two conditions. The necessary condition, the first condition is that a reasonable person in the circumstance does not feel free to leave, the Mendenhall test. The second condition is even with a show of force, as long as there is not a physical touching, you must submit to the authority of the police. Here, Mr. Stover did anything but submit to the authority of the police. He disobeyed their express command. He got out of the vehicle and walked away. He carried a gun with a bullet in the chamber ready to fire. Had he basically squeezed the trigger, it would have gone off around to the front of the car, which he had in his hand when the officer came around from the other side. And only when the officer pointed a weapon at Mr. Stover did he discard the gun. Now, it's very difficult to see that as any sort of submission to authority. Had Mr. Stover remained in the vehicle and thrown the gun out the window, it could well be a different case. Had Mr. Stover taken— Not according to you. You said it wouldn't make any difference. I said I would make that argument to a district court judge. As Judge Grimm points out, these are fact-bound endeavors that take place at the lower court level. And depending on what he did, for instance, if the police were to say, stay in your vehicle, remain in your vehicle, and then he were to start throwing things out the window as the vehicle was traveling down, say, slowly on the side of the road, I think that would not be a submission to police authority either. You changed the facts to help yourself, which, you know, I guess you're entitled to do. Vehicle wasn't moving. Tricky lawyer, Rob. No moving vehicle. In this case, no moving vehicle. He throws the gun out the window. No moving vehicle, and he merely discards the gun. Correct. Under the second condition of Hodari, I would argue, and I may well not win arguing it, that he hasn't submitted to police authority because part of submission to police authority is staying put in the vehicle and throwing projectiles out of the vehicle, particularly when those projectiles are... The gun is wrapped in a pillow. I mean, it's not going to hurt anybody. If the gun were wrapped in a pillow, and he were to discard it and say to the police, just so you know, this is my gun, and I'm throwing it out the window, then he would have submitted. Just do the facts that I give you. Okay. Just the pillow gun, Your Honor. I think that in that circumstance, he would have submitted to the police authority. Or he didn't have another gun in the car. Right. And I thought you told me earlier that whenever you discard evidence, that's not submitting to authority. No, it's not whenever, Your Honor. In this case, we're looking narrowly... Well, I asked you about marijuana, and you said that would be not submitting to authority either if he threw that out the window. That's right, Your Honor. And I think in terms of... That sounds to me like whenever. Yeah. Well, where the line is drawn, I think, is a fact-bound question as to what his intent and what the officers observed at the time, in the same way that it's possible that an individual that gets out of the car and walks toward the officers may well submit to their authority. It depends on what he says. It depends on what he does. It depends on what his intent is. It depends on the totality of the circumstances in the case. There are definitely cases you could come up with, I think, where someone could remain in the vehicle, submit to police authority, while simultaneously throwing something out of the vehicle. And if I said differently earlier than I misspoke and I recharacterized my argument... That's correct, Your Honor. If there are no further questions... Your Honors, Judge Gregor got it exactly right. The seizure occurs at the moment the officers pull in and block Mr. Stover's car, and they need reasonable suspicion at that moment. They didn't have reasonable suspicion at that moment. They didn't have reasonable suspicion. I agree with you. I speak only for myself. They didn't have reasonable suspicion. They did block him in. But under the Supreme Court law, when you don't have any touching, if one of them had touched them, that would be all that she wrote. When you don't have touching, you have to either have passive acquiescence or you have to show that you have deferred to authority. And the question is, do you have that here? That's what we're just... But you can't... Passive acquiescence for two seconds does not count. You would agree to that. Passive acquiescence is responding to authority by not making affirmative attempts to evade authority. There's no affirmative attempt to evade authority, including simply because he possesses a gun. Again, it's been pointed out. He not just possesses a gun, he has a loaded gun in his hand. But there's no community making an attempt to point it at the officers. Well, we don't know that, do we? There's no evidence of that. He had it in his hand after the officers had spoken to him. He had it in his hand, but there's no evidence and there can't be an inference because there is no evidence. Well, there is evidence. What's the reasonable inference? It's the bad deal coming. Again, the reasonable inference when this all occurs in a short amount of time and he walks five to six steps to the hood of the car is that. Short amount of time you're relying on. That's what you would say. He was running along to the front of the car, right? In the short amount of time instead of running in a direction opposite the officers. He was running in a direction opposite of the officers because if he'd run toward them, he'd have run right into their car. Tell me if I'm wrong here because you know these facts better than I do, but I thought that they had blocked his car in so that they're blocking him in at the rear of his car. He walks to the front of his car, so he's walking away from the officers. Is he not? In United States v. Jones, this court cites approvingly United States v. Green where the officer, where the defendant is walking away from the officers and there's a stop. He wasn't walking away from them. Factually, he was walking away from the officers here, correct? Yes, but he's walking to the front of the car which I'm distinguishing from walking in a direction that is walking towards a house that is in a total opposite direction. In other words, he's walking five to six steps. He's going from here, turning to the hood of the car. He's not going this way and walking. Well, I looked at the pictures, which it's hard to make too much out of them, but it doesn't look like there's anywhere to go. There's not. He could have. So walking to the front of the car was the best he could do. He could have turned left and run towards the street. He could have turned right and run into an alley. Things were blocking him in, no? There's a small parking lot to, directly in front of him, I would guess it's about 15 feet, there's an apartment complex. To the left of him, there's another apartment complex, but there's an alley in between the two apartment complexes. And then to his left, there's some trees and a road. So he definitely could have ran in an attempt to evade the officers, but that's not what we have here. In this fact, he didn't run away. He did not go in the direction of the officers, but there's no evidence that he ran away. Instead, he walked. The evidence is that he walked around the front. But I think the problem is we're conflating acquiescence with obedience, and that's different. If you Venn diagram it, in the sense, all obedience is in acquiescence, but that kind of thing, in the sense that you can acquiesce and be disobedient. Otherwise, he's trying to get rid of the gun. I can't go anywhere, but I certainly don't want to be sitting here with a gun. So he stays there, and he tries to throw it away. That becomes the acquiescence, because really, you're saying, hey, they got me. I'm going to be arrested. He's going to confront me. I need to throw this away. He didn't run away. So I don't understand why disobedience means that you're not acquiescent. I think that gets to the point you were making to the government. He doesn't have to acquiesce by remaining in the car. That goes back to Jim. He got out and started walking away, and Halsey ordered him to return to the truck, too. And he didn't do that. But within a few seconds after he dropped the gun, he gets back in the car. And that goes to Judge Gregory's point. There doesn't have to be obedience to the officer for there to be acquiescence. I see my time's remaining. I'm happy to answer any other questions. It would be like saying if the officer says, put your hand up, and rather than putting his hand up, he gets on the ground and just lays flat on his face. But what he did is disobedient, but it's still. It's not obedience, but it's still acquiescence. Yes, I agree. That's the problem. We haven't found any cases that are like this, right? I've already asked you that. Where you have- Where a defendant is walking away- With a gun in the hand. With a gun in the hand. There are definitely cases, and they're cited in the brief, where the officers pull behind the car and the defendant gets out, and then evidence is later discovered. Right. I see my time is up. If there's any questions, I'm happy to answer them. No, we appreciate your argument. Appreciate both arguments.
judges: Diana Gribbon Motz, Robert B. King, Roger L. Gregory